UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. LOREN QUALLS,<br>an individual, dba THEKARMICLEAF, a Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, a independent agency of the federal government, SUPPLEMENTAL TARGETED ADVANCE PROGRAM, a not-for-profit initiative. INDIVIDUALLY Isabella Guzman, Antwan Griffin, Mark Lingren, Diedra Henry-Spires, Major Clark, Kendall Corely, Francisco Sanchez, June Healy, and Does 1-10<br><br>Defendants, | SEALED<br><br>Case No. 1:22-cv-00511-JLT-HBK<br><br>**PLAINTIFF UNITED STATES OF AMERICA, LOREN QUALLS AND THEKARMICLEAF'S NOTICE OF MOTION FOR SUMMARY JUDGEMENT**<br><br>Date:    December 5th, 2022<br>Judge:   Hon. Helena M. Barch-Kuchta<br><br>FILED<br>DEC 0 6 2022<br>CLERK U.S. DISTRICT COURT<br>EASTERN DISTRICT OF CALIFORNIA<br>BY_____<br>DEPUTY CLERK |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Monday, December 5, 2022, or as soon thereafter as the matter may be heard in Court (Hon. Helena M. Barch-Kuchta), located at 2500 Tulare St, Fresno, California 93721. The United States of America, Loren Qualls and theKarmicLeaf LLC (the "Plaintiffs") will move for summary judgment, as set forth below.

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 260(a), "a party [may] move for summary judgment at any time, even as early as the commencement of the action." Fed. R. Civ. P. 56 (Advisory Committee Notes to 2009 Amendment) (emphasis added). Because there is no genuine dispute as to any material fact related to the claims on which the United States and related plaintiffs moves, and they are entitled to judgment as a matter of law, the plaintiffs hereby expeditiously seeks summary judgment against all Defendants. This motion is

1

based on the following complaint for violations of FALSE CLAIMS ACT, attached herewith, on the arguments of pro se litigant that may be made at any hearing on this matter, and on all relevant documents on file in this action.

## TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................................... 1

MOTION FOR SUMMARY JUDGMENT.........................................................................1

INITIAL COMPLAINT................................................................................... 4

PROOF OF SERVICE.......................................................................................5

Qualls v. SBA, *et al.*
USDC, Eastern District Case No. 1:22-cv-00511-JLT-HBK

MOTION FOR SUMMARY JUDGEMENT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex *rel*. LOREN QUALLS, *pro se*<br>an individual, THEKARMICLEAF, a Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, a independent agency of the federal government, SUPPLEMENTAL TARGETED ADVANCE PROGRAM, a not-for-profit initiative. INDIVIDUALLY Isabella Guzman, Antwan Griffin, Mark Lingren, Diedra Henry-Spires, Major Clark, Kendall Corely, Francisco Sanchez, June Healy, and Does 1-10<br><br>Defendants, | Case No.<br><br>***FILED IN CAMERA AND UNDER SEAL***<br><br>**COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**JURY TRIAL DEMANDED** |

**FILED UNDER SEAL AS REQUIRED BY 31 U.S.C § 3730(b)(2)**

Loren Qualls, *pro se litigant* and theKarmicLeaf LLC brings this *qui tam* action as Relator on behalf of the United States of America against Small Business Administration and Supplemental Targeted Advance Program (together, "SBA" or "Defendants"), under the False Claims Act ("FCA"), 31 U.S.C. § 3729-3733, and alleges — upon knowledge with respect to his own acts and those he personally witnessed, and upon the information and belief with respect to all other matters — as follows:

**PRELIMINARY STATEMENT**

1. This case is about SBA's fraud on COVID Economic Disaster Grants, commonly known as the Supplemental Targeted Advance Grants Program, through its request and submission of inaccurate and incomplete financial information denying applicants with approval

status; some applicant approvals where consistently reported as final and merely needing to update applicants banking information for disbursement but subsequently deemed non-eligible. At the same time, and without disclosing the totality of these acts, Defendants unlawfully misappropriated more than 300 billion dollars ($300,000,000,000) from the United States Federal Reserve Bank.

2. This is a qui tam action brought on the behalf of the United States of America under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. The Relator seeks to recover treble damages and civil penalties on behalf of the United States of America arising from the conduct of the Defendants who: made, used, or presented, or caused to be made, used or presented, certain false or fraudulent statements, records and/or claims for payments or approvals under the Supplemental Targeted Advance Grants Program, by and through Small Business Administration ("SBA"); all in violation of the False Claims Act, 31 U.S.C.§§ 3729, et seq. (The "FCA") in violation of the Federal Trade Commission Act See 15 U.S.C. §§ 41-58 (the"FTC" (bait&switch)); in violation of Contra Proferentem Rule, *Horn & Assocs., Inc. v. United States, 104 Fed. Cl. 121, 133 (2012)*; in violation of Uniform Commercial Code ("UCC"), University of Southern California v. Bryson (1929) 103 Cal.App. 39 by unlawfully withholding, repurposing more than thirty-five billion dollars ($35,000,000,000) of supplemental COVID-19 disaster funds allocated by the United States by misrepresenting themselves as *grant remitters*; authorizing, administering and disbursing Supplemental Targeted Advance Grants on behalf of the United States. They misrepresented the offer of Targeted and Supplemental funding for the smallest and hardest hit business and private non-profits, specifically under-represented [business minority owned] businesses who could demonstrate a 30% reduction in revenue in March. The Supplemental Targeted Advance Grant Program has proven to be popular to small businesses struggling to stay open in order to serve their communities during the COVID-19 pandemic where nearly five-hundred thousand (500,000) continue to struggle to remain open and approximately one-hundred thousands (100,000) have closed permanently in 2021 due to this fraud.

3. A critical difference between the Supplemental Targeted Advance Grants and the SBA Economic Injury Disaster Loans ("EIDL") is the Supplemental Targeted Advance Grants do not need to be paid back to the SBA; allowing the recovery businesses to avoid working under

2

duress to make loan and interest payments to repay the EDIL during difficult economic times. Through the Relator's interactions with various employees of the Defendant and other persons, Relator has "direct and independent knowledge" of the instant allegations. In addition the Relator has "voluntarily provided," and offered to provide, this information. Therefore, to the extent any of these allegations are deemed too have been based upon a public disclosure, Relator is an "original source' of this information within the meaning of the False Claims Act.

4. The SBA assigned reviewers to examine business applications determining the eligibility, though if a business received and invitation and responded accepting the offer the business is then approved to receive grants. Since the grant process differs from the loan process the program review of applicants initially was to be cursory and unlike traditional government grant guidelines, in order to place the disaster funds immediately in the position of the injured businesses, however, the Supplemental Targeted Advance Grants program neither functioned with immediacy or processed the grant separately from the loans, vetting the grant applicants under loan stipulations which disqualified grant applicants.

5. In 2020 the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act, in response to the economic fallout of the COVID-19 pandemic in the United States. The CARES Act was intended to rescue businesses and individuals from a COVID effected economy. The SBA was designated manage and disburse business funds through the Restaurant Revitalization Fund (RRF), EDIL, Payroll Payment Program (PPP) until depleted or program expiration. The establishment of supplement funds and their disbursement became primarily the sole responsibility of the SBA.

6. Defendant Small Business Administration ("SBA") through four affiliates, including Defendant Supplemental Targeted Advance Grants Program are currently offering thirty-five billion dollars ($35,000,000,000.00) in supplemental funds and loan relief. Through these programs, the SBA is given authority and by and through misrepresentation defrauding the United States government, diminishing American small businesses, increasing unemployment and destabilizing the American economy, forcing a decline in small business growth by little or no financial support.

7. While the SBA has grown and accelerated their own organization, reaping the benefits of the Supplemental Targeted Advance Grants Program along with its affiliates, has

utterly failed at fair and equitable support of small business, assuming none of its responsibilities clearly set out in the regulations of the Supplemental Targeted Advance Grants Program and affiliate programs. While their staff and facility has grown American businesses continue to suffer and downsize. Relator Loren Qualls learned this first-hand when he received an invitation email for the Targeted and Supplemental grants offered by the SBA in February of 2021.

8. As a result, the SBA has made hundreds of thousands of businesses non-eligible based on poorly evaluated business applications and continues to withhold the financial support still needed for many businesses. The SBA has been doing this openly since the inception of their affiliate programs, shirking duties to monitor, investigate and certify the accuracy, completeness and truthfulness of the business applicant as determined by SBA reviewers. Further, after receiving the applications, Defendants have failed in their duties to properly review, evaluate fairly, monitoring reviewers and the accuracy of their determination. Even now, they continue to retain an inadequate, inaccurate evaluation processes leading to non-eligibility [ineligible].

9. When Relator exposed a massive number of non-eligible applications, that had been designated approved but delayed for greater than thirteen (13) months with approval ratings the SBA claimed systematic failure resulting a lost business applicant data. SBA implemented an additional hiring phase to manage the backlog of business applicants of which the new hires began to immediately and inaccurately code grants as loans, denying grant then offering loan reconsideration, theKarmicLeaf implemented procedures to notify the SBA of the issue. The compliance failures theKarmicLeaf uncovered should have been an eye-opener to the SBA-wide failures to pay business application grants and because of what theKarmicLeaf identified it became evident it was not a problem with just a sub-section of denials at the SBA for 2021.

10. Moreover, as described below, Relator reached by email the Defendant's Covid Advance Bank Returns requesting that their bank information be updated, at the behest of the Defendant, who stated their office attempted to deposit grant funds but had been returned by bank, whereas the bank stated no such transaction had ever occurred. The Defendant requested multiple documents, starting the evaluation process again, requesting the same documents for over period of twelve (12) months until an agent of the Defendant's office updated the documents as correct inputting them into the Defendant's database. The SBA disaster customer service agent was later reprimanded and told they could no longer assist business applicants with

4

correct forms and questions regarding processing. Two (2) months after the agent submitted the appropriate documents, ten (10) batches of already submitted documents and one (1) year of the Defendant communicating the funds our available, Relator discovers multiple reviews meeting Defendant eligibility standards but designated non-eligible. Defendant as taken steps in the negative to throttle theKarmicLeaf efforts to gain grant funding, notifying the business of a final review, which has not been a standard for grants but loans. The Defendant has made no effort to correct the inaccurate determinations and its poorly managed processes, it knows exist. Including the Targeted and Supplemental Grants guidelines which are clearly stated on Defendants webpage, where in which the loan officer conducting the final review failed to adhere, negating thirteen (13) months of approvals to a three (3) minute phone call resulting non-eligibility based on a document which the Defendant had waived. Defendants' failure to make these corrections is causing a wave small business closures and increased unemployment eroding the American economy.

11.  The solution to the increasingly widening schism between failing and thriving American small businesses is for the SBA to keep their promise of financial support, correcting their review process. However, to date the SBA has made no effort correct the massive inconsistencies and failures to deliver the billions of dollars the federal government has prescribed to stabilize the economy through supporting small business. Instead it is costing billions of dollars in damages to the federal government.

## PARTIES

12.  Business Owner Loren Qualls ("Relator") is a citizen of the United States and a resident of the State of California. He has owned theKarmicLeaf since October 2016 and he is currently a Business Applicant ("#3300558580") in the SBA's Supplemental Targeted Advance Grants Program affiliate. He is suing on behalf of the United States, inclusive of the United States Department of the Treasury, pursuant to 31 U.S.C. § 3730(b).

13. Defendant Small Business Administration ("SBA"), a independent agency of the federal government, headquartered in Washington, District of Columbia, United States. SBA owns, controls and /or operates affiliated organizations, programs and initiatives through out the United States and California, including the Supplemental Targeted Advance Program, a not-for-

5

profit initiative. Individually Isabella Guzman, Antwan Griffin, Mark Lingren, Diedra Henry-Spires, Major Clark, Kendall Corley, Francisco Sanchez, June Healy, and Does 1-10. SBA typically manages operates a budget of roughly three-hundred and twenty billion dollars ($320,000,000,000.00) with approximately 3, 293 employees.

14. Defendant Supplemental Targeted Advance Program and the Restaurant Revitalization program of the SBA headquartered in Washington, DC, a not-for-profit program with 3,131 employees and locations across the United States of America and California.

## JURISDICTION AND VENUE

15 Pursuant to 28 U.S.C. § 1331, this District Court has the original jurisdiction over the subject matter the civil action since it arises undertake laws of the United States, in particular the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* In addition, the FCA specifically confers jurisdiction upon the United States District Court, 31 U. C. S. § 3730(b).

16. This District Court has personal jurisdiction over SBA pursuant to 31 U.S.C. § 3732(a) because the FCA authorizes nationwide service of process and SBA has significant operations within this district.

17. Venue is likewise proper in this district pursuant to U.S.C. § 3732(a) because SBA transacts substantial business and resides in this judicial district.

## THE LAW

**The False Claims Act**

18. the FCA, specifically 31 U.S.C. § 3729(a)(1) and (2), imposed liability upon any person who: "knowing presents, or caused to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement to get false or fraudulent claims paid or approved." Any person found to have violated these provisions is liable for a civil penalty of up to eleven thousand dollars ($11,000.00) for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

19. The FCA imposes liability where the conduct is "in reckless disregard of the truth or falsity of the information" and "no proof of specific intent to defraud is required." 31 U.S.C. § 3729. The FCA also broadly defines "claim" as including "any request or demand, whether under

6

a contract or otherwise, for money or property which is made to a contractor, grantee or other recipient if the United States Government provides any portion of the money or property which is requested or demanded." 31U.S.C. §3729(c).

**Federal Trade Commission Act**

20. The FTC imposes liability: Secs. 5, 6, 38 Stat. 719, as amended, 721; 15 U.S.C. 45, 46; 32 FR 15540, Nov. 8, 1967, unless otherwise noted. § 238.0 Bait advertising defined.[1] Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised. 238.0 [1] For the purpose of this part "advertising" includes any form of public notice however disseminated or utilized. § 238.1 Bait advertisement. No advertisement containing an offer to sell a product should be published when the offer is not a bona fide effort to sell the advertised product. § 238.2 Initial offer. (a) No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another. (b) Even though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception.

**Contra Proferentem Rule**

21. The Contra Proferentem Rule ("CPR") states any clause considered to be ambiguous should be interpreted against the interests of the party that created, introduced, or requested that a clause be included. Where there is doubt about the meaning of the contract, the words will be construed against the person who put them forward. *See* Appeal of Pascal & Ludwig Engineers, EN GBCA No. 6377, 99 – 1 BCA 30135; City Electric, Inc., ASBCA 24565, 82 – 2 BCA 16057. See Sturm v. United States, 421 F.2d 723, 727 (Ct.Cl. 1970). *See* Tecom, Inc. v. United States, 66 Fed. Cl. 736, 748 (2005)

(citing Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947)). Horn & Assocs., Inc. v. United States, 104 Fed. Cl. 121, 133 (2012) (quoting Fry Commc'ns, Inc. v. United States, 22 Cl.Ct. 497, 503 (1991)).

**Uniform Commercial Code**

22.     § 1-103 *et seq*. Construction of Uniform Commercial Code

(a) The Uniform Commercial Code must be liberally construed and applied to promote its underlying purposes and policies, which are: (1) to simplify, clarify, and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and (3) to make uniform the law among the various jurisdictions.

(b) Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

23.     This means that pledges are not enforceable unless: (1) the pledgor receives consideration for making the pledge; or (2) the charity has detrimentally relied on the pledge. Courts have held that an unconditional promise to perform an action for pledgor is sufficient. (Buchtel College v. Chamberloix (1906) 3 Cal.App. 246.) Withdrawn or unfulfilled pledges can seriously harm a charity that budgets and/or relies on the anticipated gift based on *detrimental reliance* (University of Southern California v. Bryson (1929) 103 Cal.App. 39.).

## FACTUAL BACKGROUND

### I. THE SUPPLEMENTAL TARGETED ADVANCE PROGRAM

24.     Supplemental Targeted Advance ("STA") is a program funded by the federal government. The Supplemental Targeted Advance provides supplemental payments to small businesses effected by economic disaster in the United States. Established by Title II of the CARES Act of 2020, Title V of the American Rescue Plan Act of 2021 (codified as amended at 15 U.S.C. § 9001 note. *et seq*.).

25.     The agency of the United States responsible for the Supplemental Targeted

8

Advance program is the Small Business Administration ("SBA"). *See e.g.* 15 U.S.C. § 633. The agency within SBA administering the program is the Economic Injury Disaster Loan ("EIDL") program.

## II.  THE EIDL TARGETED ADVANCE PROGRAM

26.  The EIDL Targeted Advance ("ETA") is funded by the federal government. The Targeted EIDL Advance provides funds to small businesses applicants who are in a low-income communities.  Established by Title II of the CARES Act of 2020, Title V of the American Rescue Plan Act of 2021 (codified as amended at 15 U.S.C. § 9001 note. *et seq.*).

27.  The agency of the United States responsible for the EIDL Targeted Advance program is the Small Business Administration ("SBA"). *See e.g.* 15 U.S.C. § 633. The agency within SBA administering the program is the Economic Injury Disaster Loan ("EIDL") program.

28.  The EIDL programs are comprised of Parts A, B, and C for the purpose of this action. This case is about SBA's fraud on Part C.

## III.  SMALL BUSINESS ADMINISTRATION PART C - THE TARGETED AND SUPPLEMENTAL ADVANCE PROGRAM

29.  Small Business Administration Part C, also known as the Economic Injury Disaster Loan program, authorizes eligible small businesses to receive payments under the Targeted EIDL Advance and Supplemental Targeted Advance Part A, the email invite sent to eligible small businesses. Part B, enroll the eligible businesses having them submit an application in correspondence the invitation. Part C allows the SBA to administer advance payments to invited eligible, small businesses. Title 26 U.S. Code, Section 45D(e);15 U.S.C. § 9001. *et.seq.*

30.  In the STA and ETA programs the SBA authorizes its affiliates to review grant-business applicants for advance payments. The EIDL, Payment Protection Plan ("PPP"), STA and ETA, four (4) programs offered by the SBA. *See,* https://www.sba.gov/sites/default/files/2021-04/Targeted%20and%20Supplemental%20Advance%20FAQ_FINAL-508.pdf [changes 4/21 three (3) months after plaintiff applied]

### A.  Application Procedure and Process

9

31. As described by the SBA's Office of the Inspector General ("OIG"), here are the key attributes of the Small Business Administration Part C program:

*Economic Injury Disaster Loan program*

*Targeted EDIL Advance:*
To be eligible, businesses and nonprofits must meet the following requirements:
a. located in a low-income community as defined by Title 26 U. S. Code, Section 45D(e); b. suffered greater than 30 percent economic loss over an 8-week period since March 2, 2020, compared to the previous year;
c. have 300 or fewer employees; and
d. meet **other** eligibility requirements applicable to EIDLs.

*Supplemental Targeted Advance:*
To be eligible, businesses and nonprofits must meet the following requirements:
a. located in a low-income community as defined by Title 26 U.S. Code, Section 45D(e); b. suffered greater than 50 percent economic loss over an 8-week period since March 2, 2020, compared to the previous year;
c. have 10 or fewer employees; and
d. meet **other** eligibility requirements applicable to EIDLs.

### B. Invitation by Email

26. The invitation to apply will be sent to the primary contact email address associated with your original EIDL application. For the Supplemental Targeted Advance program, starting April 21, 2021, the SBA began sending email invitations for businesses that applied for the Targeted EIDL Advance and are potentially eligible for the Supplemental Targeted Advance. The invitations include a link to the Targeted EIDL Advance portal where businesses can submit their applications.

### C. Approval and Disbursement

27. The SBA will reach out directly to EIDL applicants who received an Advance of less than the $10,000 maximum. The SBA's email will provide instructions to the business owners about how to provide the SBA with the required information to determine eligibility, and how to submit documentation for any additional grant funds.

If I received $10,000 for the EIDL Advance or Targeted EIDL Advance program, can I still receive additional funds for the Supplemental Targeted Advance Program? Yes. Eligible Supplemental Targeted Advance applicants can receive $5,000 supplemental payment in addition to the full $10,000 received from

> previous Advance or Targeted EIDL Advance. SBA will reach
> out directly to applicants who may be eligible for the Supplemental Targeted
> The SBA will reach out to applicants
> who applied for SBA COVID-19 EIDL funding before Dec. 27, 2020,
> and did not receive any Advance funds because all available Advance funding
> was already exhausted. The SBA will email instructions on how to provide
> the SBA information to determine eligibility and how to submit
> the necessary documentation.
>
> If you have not yet filed your 2019 Federal Tax Return,
> you should complete that process. You will also be required to provide
> the business' monthly gross receipts for each month from January 2019
> through the most recent month-to-date period. This information will be
> used to determine that your business meets the 30 percent
> reduction in revenue requirement for the Targeted EIDL Advance and a 50
> percent reduction for the Supplemental Targeted Advance.
>
> Applicants who meet the low-income community criteria will be asked
> to provide gross monthly revenue for January 2019 through the most recent
> month-to-date period (all forms of combined monthly earnings received) to
> confirm the 30 percent reduction in revenue for the Targeted EIDL Advance
> and a 50 percent reduction for the Supplemental Targeted Advance. They will
> also be required to electronically sign an IRS Form 4506-T to allow the
> SBA to request tax information on the applicants' behalf. Tax verification
> processes and requirements for businesses in U.S. territories may differ.

31.     The SBA, as stated waived the 2019 tax return submission in 2021 due to the backlog of unprocessed 2019 tax returns, a result of the COVID-19 Pandemic; to date there are more than seventeen million (17,000,000) unprocessed 2019 returns, . Yet as of 2022 the SBA is demanding those returns as a standard of eligibility which cannot be met. This action and policy on its on is in violation FCA, FTC, UCC and CPR. Further, The Relator, through contact with SBA employees and representatives has knowledge that reconsiderations and reevaluations for funding is false information through SBA sent out letters and emails offering both reconsiderations and reevaluations this option is no longer available. Moreover the request for 4506t has an expiration (the form is invalid after six (6) months) which applicants are not made aware by design, until after a third or fourth submission in a deadline compliant program.

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

## FIRST CLAIM

False Claims Act: Presentation of False Claims

(31 U.S.C. § 3729(a)(1)(A))

32. Relator re-alleges and incorporates by reference herein the allegations previously alleged.

33. The United States seeks relief against Defendants under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

34. Defendants knowingly presented, or caused to be presented, false or fraudulent claims, actions or approvals in connection with COVID-19 Disaster Funds for small business in the amount of thirty-five billion dollars ($35,000,000,000.00).

35. By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined at trial.

36. By engaging in the conduct described in the foregoing Paragraphs, Defendants have violated the False Claims Act.

## SECOND CLAIM

Using False Records or Statement

(31 U.S.C. § 3729(a)(1)(B))

37. Relator re-alleges and incorporates by reference herein the allegations previously alleged.

38. The United States seeks relief against Defendants under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

39. Defendants knowingly made, used, or caused to be made or used, false records or statements material to false and fraudulent claims, in connection with the submission of its grant process.

40. By reason of Defendants' false claims, the United States has been damaged in a substantial amount to be determined.

41. By engaging in the conduct described in the foregoing Paragraphs, Defendants have violated the False Claims Act.

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

## THIRD CLAIM

False Claims Act: Making or Using False Record
or Statement to Avoid an Obligation
to Refund or Remit
(31 U.S.C. § 3729(a)(1) (G))

42. Relator re-alleges and incorporates by reference herein the allegations previously alleged.

43. The United States seeks relief against Defendants under Section § 3729(a)(1)(B) of the False Claims Act, 31 U.S.C. 3729(a)(1)(B).

44. Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation (promise) to pay or transmit money or property to small business on behalf of the United States government, or knowingly concealed, or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to small business on behalf of the United States government in connection to submission to its grant program.

45. Defendants failed to pay or transmit money to small business applicants on be half of the United States because of Defendant's acts and conduct.

46. By reason of the Defendants' use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

## FOURTH CLAIM

Fraud and Deception in the Inducement of
SBA Employees to Breach Law
(31 U.S.C. § 3729(a)(1)(C))

42. Relator re-alleges and incorporates by reference herein the allegations previously alleged.

43. The United States seeks relief against Defendants under Section § 3729(a)(1)(C) of the False Claims Act, 31 U.S.C. 3729(a)(1)(C).

44. Defendants knowingly made, used, or caused SBA employees to be made to use, false records or statements material to an obligation (promise) to pay or transmit money or property to small business on behalf of the United States government, or knowingly concealed, or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to small business on behalf of the United States government in connection to

submission to its grant program.

45. Defendants failed to pay or transmit money to small business applicants on be half of the United States because of Defendant's acts and conduct.

46. By reason of the Defendants' use of false statements, the United States has been damaged in a substantial amount to be determined at trial.

## RELEIF REQUESTED

**WHEREFORE**, Relator requests judgement be entered against Defendants, ordering that:

1. As to all counts for the violations of the Federal False Claims Act, Defendants:

   a. Pursuant to 31 U.S.C. § 3729(a), Defendants pay an amount equals to three times the amount of damages the united States Government has sustained a a result of Defendant's actions, which Relator currently estimates to be in the hundreds of billions of dollars; plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of the 31 U.S.C. §§ 3729 *et seq.,* or such other penalty as the law may may permit and/or require for each violation of the laws which governed Defendants' conduct.

   b. Relator be awarded a relator's share of the judgement to the maximum amount provided pursuant to 31 U.S.C. § 3730(d) of the False Claims Act and/or any other applicable provision of the law;

   c. Relator be awarded all cost and expenses of this action, including attorney's fees as provided by 31 U.S.C. § 3730(d) and any other applicable provision of the law;

2. Relator, on behalf of the United States be awarded such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY

Pursuant to Fed. R. Civ. P. 38, the Relator hereby demands a trial by jury.

Dated: April 29, 2022                             Respectfully submitted,

**LOREN L QUALLS, PHD**

By: _____
LOREN L QUALLS, PHD
Relator

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. My business address is 3427 M Street, Merced, California 95348.

On the date below, I served the following document:

## NOTICE OF MOTION FOR SUMMARY JUDGEMENT

|   |   |
|---|---|
| | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is Depo Transcript sited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

**ADDRESSED AS FOLLOWS:**

U.S. Small Business Administration,
409 3rd St SW, Floor 2
Washington, DC 20416

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

I certify and declare under penalty of perjury that the foregoing is true and correct. Executed at Merced, California on December 5, 2022.